JULIUS REICHEL, Respondent, v. STANDARD RICE Co., INC., Appellant.

First Department, April 19, 1929.

*Eli J. Blair* of counsel [*Platt, Field & Taylor*, attorneys], for the appellant.

*Joseph Force Crater* of counsel [*John Bogart*, attorney] for the respondent.

FINCH, J.   From a judgment entered upon the verdict of a jury in favor of plaintiff the defendant appeals.   Defendant also appeals from two orders made at Special Term denying its motion to set aside service of process.

The assignor of plaintiff, hereinafter called plaintiff, sues for the purchase price of goods sold and delivered.   By answer, the defendant denies the allegations of the complaint.   It also sets up as a defense, among others, that the bags delivered pursuant to the contract between the parties did not comply with the requirements of the contract, but were greatly inferior to sample, badly discolored and in need of repairs.   In consequence they were immediately rejected by the defendant, in which rejection plaintiff acquiesced. As a further separate defense, it is alleged that process has never been duly served upon the defendant, but that defendant is appearing under duress because of the court's denial of its motion to vacate the alleged service of process.   By way of counterclaim, the defendant demands a balance uncollected upon a judgment recovered by the defendant against the plaintiff in the State of Texas in the sum of $1,868.81.   By a second counterclaim, a like amount is demanded

as damages for breach of contract on the part of plaintiff in failing to deliver the goods called for by the contract. Plaintiff joins issue by reply, and sets up lack of jurisdiction of the Texas court.

Let us consider, first, the claim that the alleged service of process upon defendant was defective. Any possible objection upon this ground has been waived by the active participation of defendant in the trial of the action upon the merits and in setting up counterclaims. (*Henderson* v. *Henderson*, 247 N. Y. 428.)

Turning now to the basic facts involved in the cause of action and the defense of a rejection and acquiescence, we find no substantial dispute. Plaintiff sent to defendant at Houston, Texas, sample rice bags, with an offer to sell. Defendant accepted this offer for 60,000 empty rice bags, " all to be bright, clean, free from holes, mends or patches, * * ' * delivered Houston, payment after receipt and examination." Upon arrival and inspection the defendant wrote to the plaintiff as follows:

" HOUSTON, TEXAS, *July* 20, 1922.
" YESKEL SUPPLY COMPANY,
   " 110 Lillie Street,
      " Newark, N. J.:

" GENTLEMEN.— With reference to our purchase of the used rice pockets from you as per our telegram of June 26th, and letter of June 27th, the bags we have received are very inferior to what you have sold us, and of the one bale opened, practically 50% of the bags will have to be mended to say nothing of the badly discolored bags which are of no value to us. We would much prefer not to use the bags you have shipped us, and we will ask that you ship us 60,000 of the quality you have sold to us.

" Please advise what you will do.
        " Yours very truly,
      STANDARD RICE COMPANY, INC.
          " F. A. FARDA
             " *Secretary.*"

To this letter the plaintiff replied that the defendant might reject such bags as were not satisfactory, and defendant would receive shipping instructions for the rejects, stating, however, that the bags had been inspected, and they did not believe there would be many rejects. Defendant replied, objecting to the expense of having to sort the bags. Plaintiff agreed to bear this expense. The defendant thereupon had thirty bales of the shipment sorted and notified plaintiff that the result was " 5,965 bags contract quality and acceptable as delivery. 9,035 bags inferior to quality sold us and bags we cannot use. Expense for sorting these bags $23. Please

let us have your further instructions." To this letter the plaintiff replied in part as follows: "We are writing today to a bag man in your vicinity, and we will try to dispose of these bags to some one else. If you can use these bags the way they go, and if you wish to give your personal attention from your office, you may go through 5,000 or 10,000 more and we will allow you $3.00 M; or possibly you could sell them yourself to some of the bag men around your town, but not telling them that you are rejecting these bags from another bag man. You may have the bag man go through as many bales as they desire and we are willing to stand the cost."

Defendant then wrote that it did not care for an allowance on rejected bags, as these it could not use at any price, and further stated its willingness to pay for any bags which came up to the quality purchased, and then added: "If you desire to turn these bags over to someone else, we are perfectly willing that you do so, but before delivering same, we must have assurance from you, that you will deliver to us the amount of bags sold us and of the quality sold.

"We will be glad to have your further wishes in the matter."

To this the plaintiff replied, in part: "Replying to your letter of August 15th, wish to state that you may sort the bags and retain those that you can use, and those that you can't, you will advise us, and we will give you instructions, where to ship them.

"We will not deliver you any more bags against your order. At any rate, as already advised you previously, we have given you bags as per your contract, but of course you may go through the entire lot and retain those you see fit to accept and pay us for them, and those you cannot use, we will take back. * * *

"Kindly mail us check for the bags that you will retain."

Following this, several letters were exchanged between the parties, the plaintiff asking for a remittance and the defendant requesting a delivery of bags to replace those rejected, in lieu of which defendant stated it would purchase an equal number of bags for plaintiff's account. Finally on October twelfth, plaintiff wrote:

"Replying to your letter of the 9th, please be advised that as yet you have not given us any quantity of the bags you are rejecting. Why don't you advise us the number of bags you rejected, we don't have to use our imaginations in a case like that.

"*Now if you want to get this thing cleared up, please do not delay it any more, mail us a check for the bags you retain, and as for these that you are rejecting we will either replace you with other bags for them, or if you will advise us what you can buy them for elsewhere, we may allow you to buy them for our account. Can you say that this is not fair? What more can you expect?*

"*Won't you have enough security as to our replacing the bags to*

*you when you are thus far keeping the bags that you are rejecting and are not paying us for them?*

" Now, really, would you want us to mail you yet an additional check to the bags that we have given you? Our patience in this matter is already exhausted, and if you do not give this matter immediate attention as above outlined we shall be compelled to take action.

" You cannot whip us with two whips, you must either give us our money or give us our bags, one way or the other."

To this defendant replied:

"HOUSTON, TEXAS, *October* 18, 1922.

" YESKEL SUPPLY COMPANY,
  " ✳ 110 Lillie St.,
   " Newark, N. J.:

" GENTLEMEN.—We are in receipt of your letter of the 9th inst., and the same has our attention.

" We have already mailed you a statement showing the condition of the bags received from you and are pleased to enclose herewith our check covering the value of the bags which are up to the contract. We now await your advices regarding this matter and had you shipped us bags such as we have purchased, you would have had your money in full immediately upon receipt of the merchandise.

  " Yours very truly,
   " STANDARD RICE COMPANY, INC.,
    " F. A. FARDA,
     " *Secretary.*"

On November 9, 1922, the plaintiff wrote to the Lone Star Bag & Bagging Co., of Houston, Tex., as follows:

" *November* 9, 1922.

" LONE STAR BAG & BAGGING CO.,
   " Houston, Tex.

" GENTLEMEN.—We have word from the Standard Rice Company of your city that you would be interested to buy a lot of rice pockets we have stored at the above mentioned people's plant.

" The lot we have is about 30/40,000 and we would suggest if interested that you stop at the plant of the Standard Rice Company and look over the bags. We are willing to sell you the lot at $60.00 M f. o. b. Standard Rice Company storage plant.

" We also enclose herewith circular of other bags we have for sale and would be pleased to hear from you if interested in anything.

  " Very truly yours,
   " YESKEL SUPPLY CO.,
    " W. YESKEL."

To this letter the Lone Star Bag and Bagging Company replied:

" November 14, 1922.

" YESKEL SUPPLY Co.,
       " Newark, N. J.

" GENTLEMEN.— Your favor of the 9th inst regarding the Rice Pockets you have on hand here with the Standard Rice Co.

" We have examined these bags and find they are the ' culls ' from a lot of bags you sold the Standard Mill — all these bags are number two bags, dark and rotten bags.

" They are not Good Stock, and could not be used for Rice again. In fact all of these bags would have to be worked and patched, and many could not be used at all.

" It may be possible that we could use them — but not at any such figure as you want. Our very highest bid would be 2c each here.          Yours very truly,

       " LONE STAR BAG & BAGGING CO.,
           " A. D. SCHWARZ,
               " President."

From the foregoing it is clear that the plaintiff accepted unconditionally the rejection as made by the defendant of a portion of the bags in suit upon the ground that the same did not come up to the contract. The plaintiff, respondent, urges that the defendant, appellant, cannot take advantage of its rejection of the goods because the defendant at first demanded that good bags be sent down before it returned the bad. The trial court also charged that for the same reason " it was a rejection with a string." Any question as to whether the rejection by the defendant was unqualified is disposed of by the undenied acquiescence of the plaintiff in the rejection as made by the defendant (See italicized portion of plaintiff's letter of October twelfth), and the attempt by the plaintiff, with the permission of the defendant, to sell the goods to a third party. Since the goods were admittedly received by the defendant subject to its right to examine and reject the same after receipt and examination, title in such case only passed subject to the right of the defendant to reject the goods, and the goods having been rejected pursuant to this reservation the plaintiff cannot recover for the purchase price. (*Glass & Co.* v. *Misroch*, 239 N. Y. 475, 483–485.) In addition, plaintiff elected to exercise proprietary dominion over the rejects by attempting to sell them to a third party. This confirms the acquiescence and furnishes an additional answer to a claim by the plaintiff that title had passed. Thus both because plaintiff acquiesced in the rejection of the goods and thereafter also exercised a proprietary dominion over them after their rejection by the defendant, plaintiff could not sue for the purchase price, and the complaint should have been dismissed.

Moreover, since the defendant rejected the goods because they were not equal to the requirements of the contract, in which rejection plaintiff acquiesced, it follows that the defendant has a claim for damages for breach of contract. Such an issue was not submitted to the jury and hence there has been no adjudication of the counter-claim. By the charge of the learned trial court the jury were instructed that they might find for the purchase price of all the bags, less such damage as the defendant suffered by reason of the bags not being up to the requirements of the contract. The defendant, however, had the right to reject such of the bags as were defective and look to the plaintiff for its damage. This, as noted, it did. The defendant, therefore, had a right to stand upon its claim for damages under its counterclaim for breach of contract. In view of the result reached, it is unnecessary to consider other errors urged by appellant.

It follows that the judgment and order denying a new trial appealed from should be reversed, with costs, to appellant, and the complaint dismissed, with costs, and a new trial granted upon defendant's counterclaim. The orders denying defendant's motion to set aside service of process should be affirmed.

DOWLING, P. J., MCAVOY and MARTIN, JJ., concur; PROSKAUER, J., dissents from reversal of judgment.

Judgment and order denying new trial reversed, with costs, and complaint dismissed, with costs, and new trial ordered upon defendant's counterclaim. Orders denying motion to set aside service of process affirmed.